# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

THOMAS J. SWIECH,

     Plaintiff,

vs.                                      No. CIV 16-0101 JB/SCY

FRED LOYA INSURANCE COMPANY,

     Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Remand, filed October 6, 2016 (Doc. 13)("Motion"). The Court held a hearing on August 23, 2017. The primary issue is whether Defendant Fred Loya Insurance Company ("Fred Loya") has met its burden in establishing, by a preponderance of the evidence, jurisdictional facts that make it plausible that the amount in controversy satisfies the jurisdictional threshold of $75,000.00 for the Court's exercise of diversity jurisdiction. Because the Court concludes that Fred Loya has not met its burden, the Court will grant the Motion and remand this case to the First Judicial District Court, County of Santa Fe, State of New Mexico.

## FACTUAL BACKGROUND

The Court takes its recitation of the facts from Plaintiff Thomas J. Swiech's Complaint (filed in the First Judicial District Court, County of Santa Fe, State of New Mexico, on August 2, 2016), filed September 9, 2016 (Doc. 1-1)("Complaint"), and Fred Loya's Notice of Removal, filed September 9, 2016 (Doc. 1)("Removal"). The Court provides these facts for the purposes of establishing the background facts leading to this case, and does not adopt them as the truth for

the purposes of this Memorandum Opinion and Order regarding the Motion. The Court recognizes the facts are largely Swiech's version.

On June 21, 2013, Albuquerque Police Department officers responded to the Mission Hills Apartment in Albuquerque, New Mexico, following a shoplifting call. See Complaint ¶ 5, at 1. Apparently, a man named Brandon Sandoval -- an uninsured motorist -- fled from the officers "at a high rate of speed through an apartment complex parking lot and crashed into Plaintiff's vehicle." Complaint ¶ 6, at 2. Officers tracked Sandoval to Swiech's vehicle, a Chevrolet Camaro, at which point Sandoval again fled the scene. See Complaint ¶¶ 7-11, at 2. In fleeing from the officers, Sandoval broke into and drove Swiech's Camaro at a high rate of speed to evade the officers. See Complaint ¶¶ 17-20, at 2-3. Sandoval crashed the Camaro into one of the officer's parked Chevrolet Suburbans, causing further damage to Swiech's Camaro. See Complaint ¶¶ 22-23, at 3.

Sandoval is an uninsured driver, but Swiech holds an insurance policy with Fred Loya which provided "coverage in the amount of 25,000.00 per person, $50,000.00 per occurrence, and $10,000.00 for property damage." Complaint ¶¶ 30-32, at 4. Swiech "contracted and paid Defendant Loya for uninsured motorist coverage," Complaint ¶ 33, at 4, and made a "claim with Defendant Loya for vehicle property damage and punitive damages based on the damage to Plaintiff's vehicle," Complaint ¶ 37, at 4. Fred Loya first paid Swiech $3,566.24 for the property damage, but did not pay punitive damages, causing Swiech to file suit in New Mexico state court against Fred Loya. See Complaint ¶¶ 38-42, at 4. "[T]he trial court issued a Scheduling Order requiring the parties to mediate their claims," and, at the mediation, "Loya made a single settlement offer . . . with a pre-drafted letter." Complaint ¶¶ 43-45, at 4. Swiech's case proceeded to trial, and the trial court "made the following findings: . . . Sandoval's conduct was

willful, wanton, malicious, reckless and oppressive[;] Sandoval was entirely responsible for the damages to Plaintiff's vehicle[;] Sandoval's conduct justifies a punitive damages award[; and] Loya acted unreasonably in Plaintiff's first party claim [and] breached its duty of good faith and fair dealing."  Complaint ¶ 46, at 4-5.  "Plaintiff obtained a judgment in the district court concerning the underlying cause of action for damages for $32,000 ($20,000 recovery of punitive damages and $12,000 in attorney's fees)."  Removal ¶ 3, at 2.  Swiech alleges that Fred Loya nonetheless disputed that "punitive damages were warranted," Complaint ¶ 65, at 6, and that, although Fred Loya then additionally paid Swiech "the undisputed remaining UM/PD limit in the amount of $6,433.76," the payment was not for the purposes of satisfying punitive damages.  Complaint ¶ 68, at 6.  "Defendant Loya agreed that if punitive damages were awarded to Plaintiff, Defendant Loya would not be entitled to a credit because it did not pay for punitive damages."  Complaint ¶ 69, at 6.  Ultimately, Fred Loya sued Swiech to "reduce Plaintiff's claim for punitive damages," Complaint ¶ 70, at 7, but lost, and that state trial court "[e]ntered its judgment that Fred Loya Insurance Company shall forthwith pay Swiech the amount of $20,000 in punitive damages over and above the $10,000 amount previously paid for such property damage-based compensatory damages, together with costs and such other further relief as may be warranted under the policy or law,"  Complaint ¶ 77, at 7.  That award "beat Defendant Loya's best pretrial offer by eight times."  Complaint ¶ 79, at 7.  The state trial court also "stated on the record that the conduct of Fred Loya failing to act in good faith with regard to the settlement conference certainly exists."  Complaint ¶ 83, at 8 (internal quotation marks omitted).

## PROCEDURAL BACKGROUND

Swiech filed the Complaint in New Mexico state court, alleging three counts against Fred Loya for: (i) Breach of Contract, Count I; (ii) Insurance Bad Faith, Count II; and (iii) violation of

the Unfair Insurance Practices Act, N.M. Stat. Ann. § 59A-16-20 ("UIPA"), Count III.  See

Complaint ¶¶ 85-102, at 8-10.  For relief, Swiech requests "judgment against Defendant Loya,

including both compensatory and punitive damages, together with all available interest at the

maximum legal rate; . . . costs incurred in pursuit of this action including attorney's fees[; and]

any and all relief to which the Court deems appropriate."  Complaint at 10.  On August 2, 2016,

the same day that Swiech filed the Complaint in state court, Swiech offered to settle the claims

against Fred Loya for $50,000.00.  See Email from Matthew Zamora to Elizabeth Hill (dated

August 2, 2016), filed October 6, 2016 (Doc. 13-1)("First Demand").  Fred Loya then removed

the case on September 9, 2016.  See Notice of Removal, filed September 9, 2016 (Doc.

1)("Removal").  As grounds, Fred Loya asserts diversity of citizenship, and

> that the matter in controversy exceeds the sum of $75,000.00, exclusive of interest
> and costs, based on Plaintiff's allegations and alleged damages.  Defendant need
> only include a "plausible allegation that the amount in controversy exceeds the
> jurisdictional threshold."  *See Dart Cherokee Basin Op. Co., LLC v. Owens*, 135
> S. Ct. 547, 554 (2014).  Plaintiff seeks punitive damages against Defendant due to
> allegations of bad faith insurance practices and unfair trade practices and seeks
> attorney's fees as a matter of right under a claim of breach of contract.  *See Miera
> v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998).  Plaintiff obtained a
> judgment in the district court concerning the underlying cause of action for
> damages for $32,000 ($20,000 recovery of punitive damages and $12,000 in
> attorney's fees).  Plaintiff alleges wanton, willful and bad faith acts on the part of
> the Defendant and seeks punitive damages pursuant to the insurance bad faith,
> breach of contract and unfair practices. Consequently, it is plausible, and likely,
> that Plaintiff's alleged damages exceed $75,000.

Removal ¶ 3, at 2.  Swiech now moves to remand the case to state court, because Fred Loya has

not met its burden in establishing the requisite amount in controversy for the Court to exercise

diversity jurisdiction.  See Motion at 1.

    **1.**        **The Motion.**

    Swiech seeks remand, because, "[b]efore filing suit, Plaintiff demanded an amount in

controversy well below the jurisdictional limits of this Court."  Motion at 1.  Swiech contends

that the "amount in controversy requirement must . . . be satisfied by preponderance of the evidence," and that the "Defendants seeking removal must include a 'plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'" Motion at 3 (quoting <u>Dart Cherokee Basin Op. Co., LLC v. Owens</u>, 135 S. Ct. at 554). Swiech also provides that, where a plaintiff challenges a defendant's allegations regarding the amount in controversy upon removal, the defendants must "provide evidence establishing the amount." Motion at 3 (internal quotation marks and alterations omitted). In this case, Swiech thus maintains that Fred Loya has "not shown all of the prerequisites" for removal, because, first, "Loya, in its Notice of Removal, has attached no relevant or meritorious evidence whatsoever, in support of its amount in controversy theory [and] Loya fails to advise the Court that Plaintiff's settlement demand was well below the jurisdictional requirements of this Court." Motion at 4. Swiech next argues:

> Loya also fails to discuss in detail the claim on which this bad faith case is based. This bad faith case is rooted in a punitive damage claim Loya refused to pay. A reckless tortfeasor hit and damaged Plaintiff's car. Plaintiff was not inside the car, and Loya did pay for the vehicle's value. Loya failed to pay Plaintiff punitive damages to which Plaintiff is entitled. The $20,000.00 that Loya has not paid are solely for punitive damages for the tortfeasor's misconduct.

Motion at 4. Accordingly, Swiech explains:

> Unlike many bad faith cases, Plaintiff will not be able to offer evidence that the underlying failure to pay caused a financial hardship. There is no failure to pay medical bills, nor are there lost wages, either of which could cause a hardship. These facts diminish the likely jury award for bad faith. Plaintiff considered this in making his settlement demand. Defendant does not set forth damage model for compensatory or punitive damages or attorney fees. All Defendant has done is make its implausible characterizations of Plaintiff s demand. *See Powell v. COBE Laboratories, Inc.*, 208 F.3d 227, 2000 U.S. App. Lexis 10794 (10th Cir. 2000)(stating that the arguments of counsel are not evidence).

Motion at 4. Swiech then asserts that, after he had made a settlement demand below the jurisdictional amount, he also offered to limit damages to a number below the jurisdictional amount. <u>See</u> Motion at 4. Swiech then concludes his argument for removal by stating: "Loya

has not met its burden in proving by preponderance of the evidence that the amount in controversy sought by Plaintiffs, or what a judgment would be worth, exceeds $75,000." Motion at 5. Swiech also requests attorney's fees, because "the Court may award attorney's fees to the prevailing party 'where the removing party lacked any objectively reasonable basis for seeking removal.'" Motion at 5 (quoting Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005)).

## 2. **The Response**.

Fred Loya responded to the Motion with its Response and Brief in Opposition to Motion to Remand, filed October 20, 2016 (Doc. 17)("Response"). Fred Loya argues:

> While true that demands do provide some evidence of the amount in controversy, federal courts are not permitted to look at demands filed after removal in a self-serving manner. Swiech attempted to file a post-removal "offer of settlement" -- a procedure not recognized in federal court if filed by a Plaintiff -- to urge this Court to remand. Suddenly, Swiech dropped his prior pre-suit demand for damages from $50,000 to a mere $15,000.

Response at 1. Fred Loya thus first asks the Court not to give the post-removal offer of $15,000.00 any weight. See Response at 1. Fred Loya then "advances evidence to meet its burden in showing that the amount in controversy may exceed the jurisdictional limits." Response at 2 (citing Salazar v. GEICO Ins. Co., No., 2010 WL 2292930 (D.N.M. 2010 (Browning, J.)).

According to Fred Loya, Swiech "demanded $50,000 to avoid the filing of the complaint," but -- after removal -- "filed an 'offer of settlement' [of] a mere 30 percent of the demand lodged by the Plaintiff immediately prior to the filing of the bad faith lawsuit." Response at 3. Fred Loya asserts that "[w]hile true that pre-suit demands are some evidence of the amount in controversy, the Court must look to the evidence available at the time of the removal to determine whether the amount in controversy prong is met." Response at 3. Fred Loya thus specifies its distaste with the post-removal offer of settlement and implores the Court

not to consider such post-removal offers in its analysis.  See Response at 3-4.  Fred Loya, then,

argues about what its estimation is for the actual amount in controversy.  See Response at 4.

Regarding the Complaint, Fred Loya explains that "Swiech did not provide an amount in

controversy for the Court's review within his complaint.  Nonetheless, Swiech alleged that he

was entitled to new compensatory damages, as well as punitive damages."  Response at 5.  This

allegation is important, Fred Loya asserts, because

> [t]he amounts obtained and the amounts demanded in the underlying vehicle
> accident case are at least instructive as to Swiech's claims here because the
> amount in controversy is not readily apparent from the complaint.  In Swiech's
> proposed findings of fact and conclusions of law in the underlying case, Swiech
> proposed a judgment in the amount of $40,000.00, arguing that the court should
> award a 4 to 1 ratio of his property damage policy limits of $10,000 that had
> already been tendered. . . . .  Swiech obtained a judgment in the amount of
> $20,000.00 in punitive damages to punish the tortfeasor (an uninsured motorist).
> Consequently, Swiech obtained a total of $30,000 from the policy limits in the
> underlying case.  He did not obtain a remaining amount of $20,000 as argued.
> Both of these amounts are instructive in determining the remaining amount of
> compensatory damages that Swiech is seeking, as well as any punitive damages,
> above and beyond those compensatory amounts.

Response at 5.

Fred Loya then argues that, because "punitive damages and attorney's fees must be

included in the calculation of the amount in controversy[, a] combination of different theories

based on the complaint can support removal."  Response at 5.  Fred Loya explains: "Here,

Swiech obtained the following prior to this suit: (1) $10,000 paid out of the property damage

limits; (2) $20,000 ordered to be paid in punitive damages due to the tortfeasor's acts; and (3)

$12,000 in attorney's fees."  Response at 5-6.  Now, Fred Loya contends, Swiech first

"apparently seeks additional compensatory damages," which he sought in the underlying case in

the amount of $40,000.00.  Response at 6.  Fred Loya argues that, because Swiech has "obtained

$20,000 of the proposed $40,000.00 in punitive damages against the tortfeasor," "it is reasonable

to conclude that Swiech still seeks the remaining $20,000.00 in compensatory damages not awarded in the underlying case. Altogether, Swiech obtained $30,000 from his policy's limits." Response at 6. Fred Loya next contends that, second, "Swiech seeks punitive damages against Loya due to allegations of bad faith insurance practices and violations of the Unfair Insurance Practices Act of New Mexico," because

> specifically Swiech has alleged extensive facts that support Swiech's claims that Loya [knowingly] did not attempt in good faith to effectuate a prompt, fair and equitable settlement, failed to properly investigate the coverage available, failed to promptly provide a reasonable investigation, failed to act in good faith, acted willfully, recklessly and without regard for the rights of the Plaintiff.

Response at 6. Fred Loya asserts that, under allegations such as those, there is potential for recovery of punitive damages, as well as UIPA "statutorily-available treble damages." Response at 6. In that regard, Fred Loya maintains:

> While true that a plaintiff may not recover both treble damages and punitive damages, a plaintiff may pursue both remedies until judgment, when the plaintiff must elect the remedy. . . . Therefore, if a plaintiff obtains treble damages, then the plaintiff is essentially guaranteed three times the compensatory damages by statute. On the other hand, if the plaintiff shows bad faith, then punitive damages may exceed three times the amount of compensatory damages and have been found to be constitutional, even in instances where punitive damages are ten times the compensatory damages.

Response at 7. Drilling down into the potential punitive damages recovery, Fred Loya explains that "many courts, both state and federal, have repeatedly held that a ratio of 3 to 1 is common place in punitive awards," and that, "[e]ven if the Court only evaluates as to the policy recovery of $30,000, punitive damages at a common multiplier of 3 to 1 would exceed the jurisdictional limits alone." Response at 7, 9. Next, drilling down into Swiech's potential recovery of attorney's fees, Fred Loya explains: "In the underlying cause of action, the Plaintiff[] submitted a comprehensive attorney's fees bill that provided time entries and totals of fees, amounting to

$17,956.30." Response at 8. Accordingly, Fred Loya presents the following scenarios of amounts in controversy:

1.  Swiech urged the underlying district court to award his alleged damages of $40,000.00, in addition to the already received $10,000.00 to reach a total of $50,000 in payment as a result of the tortfeasor's conduct in the car accident.

3.  Swiech obtained a judgment of $20,000.00 in punitive damages (for the tortfeasor's conduct) and $12,000.00 in attorney's fees.

4.  By Swiech's own bad faith insurance complaint, he now seeks both compensatory and punitive damages, as well as attorney's fees, as a matter of right. . . .

5.  In comparing Swiech's prior and present sought remedies, we can determine the following:

    •   Swiech obtained a total of $30,000.00 from the policy limits. . . . If this amount is utilized as the multiplier (common 3 to 1 ratio) to reach the punitive damages amounts, then the amount in controversy far exceeds the jurisdictional minimum at $90,000, plus attorney's fees.

    •   Swiech also may claim entitlement to the remaining alleged damages not previously obtained in the lower court, but sought of $20,000.00. . . . The punitive damages resulting from a new recovery of $20,000.00 at the suggested multiplier of Swiech of 3 to 1 would add punitive damages of $60,000.00.

    •   Based on Swiech's own counsel's attorney's fees statement and affidavit, the attorney's fees amount of $17,956.30 is reasonable to be expected in this lawsuit. . . . It is likely the attorney's fees amount could exceed $25,000.00 through trial.

    •   Consequently, at Swiech's own suggested multiplier of 4 to 1 for punitive damages and his prior and lower amount awarded of $20,000, plus attorney's fees at a minimum of the prior case, the amount in controversy arrives at $97,956.30 ($80,000 in punitive damages and $17,956.30 in attorney's fees).

- Even if this Court were to reduce the Plaintiff's multiplier to a strict treble damages amount (3 to 1), the amount in controversy still remains above the minimum at $77,956.30. Certainly, if Swiech successfully urged that the punitive damages be multiplied by the total amount of the underlying case's judgment of $32,000.00 or the total amount obtained from the policy of $30,000, then the resulting amount would far exceed the jurisdictional minimum.

- Even if this Court were to utilize Swiech's pre-suit demand of $50,000, then that amount in damages, plus the attorney's fees, may certainly exceed $75,000.

Response at 9-10. Fred Loya thus concludes that "Swiech cannot suddenly change his tune on the amounts demanded and the amounts that he has sought regarding this matter," and asserts that it has carried "the burden to show by a preponderance of the evidence that the amount in controversy may exceed the jurisdictional limits." Response at 10.

**6.    The Reply.**

Swiech replied to Fred Loya's Response with the Reply in Support of the Motion to Remand, filed November 3, 2016 (Doc. 25)("Reply"). Swiech contends that the Removal is deficient, because "in its Notice of Removal, [Fred Loya] does not prove jurisdictional facts by a preponderance of the evidence." Reply at 1 (citing McPhail v. Deere & Co., 529 F.3d 947, 953 (10th Cir. 2008)). Indeed, Swiech argues, "prior to suit and removal, Defendant was on notice that Plaintiff is not seeking an amount in controversy within this Court's jurisdiction . . . [and t]he underlying judgment does not have a bearing on this issue of removal." Reply at 2 (citing Nungesser v. Bryant, 2007 WL 4374022, at *7 (D. Kan. 2007)(holding that a plaintiff's bad faith action is a suit involving a new party and litigating the existence of a new liability)). Swiech requests that, because the Removal was deficient, then, in establishing an amount in controversy

in excess of $75,000.00, the Court strictly construe the removal statute and remand. <u>See</u> Reply at 2.

Swiech also argues that, nonetheless, Fred Loya cannot "show that the amount in controversy exceeds the jurisdictional limit," because, "at the time of removal, Plaintiff had previously made a demand less than the jurisdictional limit," and Fred Loya "scoffed" at that offer of settlement, as well as the post-removal offer of an even-less amount, meaning that Fred Loya values the claim as being less than the latter offer of $15,000.00. Reply at 3-4. Swiech also calls the case straightforward, trying to cast doubt upon Fred Loya's assertion that attorney's fees will draw the amount in controversy near $75,000.00, and calls to the Court's attention his willingness to accept an offer of settlement in the stead of further litigation. <u>See</u> Reply at 4. Accordingly, Swiech maintains the Removal was deficient, because the amount in controversy does not suffice the jurisdictional prerequisites. <u>See</u> Reply at 5.

**7.      <u>The Hearing</u>.**

The Court held a hearing on a variety of issues in this matter on August 23, 2017. <u>See</u> Transcript of Hearing, taken August 23, 2017 ("Tr.").[1]  Swiech argued first regarding the Motion, explaining that "there has been no showing that plaintiff is seeking a number, that at the time of filing . . . [,] would trigger diversity," because "there was a demand for $50,000." Tr. at 16:9-13 (Valle). Swiech's counsel then also asserted: "We do a lot of bad faith cases. . . . There is no thought that somehow this case in 10 years is going to, from the sheer magnitude of attorney's fees is going to grow to a $75,000 case." Tr. at 16:13-19 (Valle). Indeed, Swiech argued, had Fred Loya sent him "a check for $50,000 . . . [that would] take care of [his]

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

attorney's fees, punitive damages, compensatory damages, everything." Tr. at 16:20-25 (Court, Valle). Swiech also explained that the $50,000.00 demand was made when he filed the Complaint, a month before Fred Loya's removal. See Tr. at 17:6-8 (Valle). Swiech asserted:

> In their response Loya puts together a -- well, this is what plaintiff asked for in the underlying case and this is what he recovered and this is what, and the answer to that is just what of it. You know, this is this case. The terms bad faith in and of itself does not suggest $100,000 verdict. It does not suggest $100,000 in controversy, and I guess Loya is going to argue about this but we filed an offer [of] settlement for a substantially lower number, lower than the $50,000 and the point that was Loya made no response. You know, I always find it fascinating when defendant has zero response to a settlement offer because no response is a response. They are indicating themselves what they view this amount to be in controversy in this case.

Tr. at 18:4-18 (Valle). Next, Swiech explained that, when he heard no response on the $50,000.00 demand, he -- after removal -- offered $15,000.00, but again received no response. See Tr. at 19:1-3 (Valle). According to Swiech, if this case went back to state court, there would be little preparation left before the case went to judgment, negating plausibility of Fred Loya's claims of high attorney's fees. See Tr. at 19:12-20 (Valle). The Court then solicited a "stipulation that you will never accept any combination of fees, punitive damages, compensatory damages above $74,999," to which Swiech agreed. Tr. at 20:5-7 (Court, Valle).

Fred Loya then argued and first asserted:

> This is a case where the underlying pleadings have an in[]determin[ant] amount of damages that are sought. So we asked the Court to look at other papers that are in existence, those other papers are from the underlying litigation as counsel previously alluded to. In that underlying litigation, they sought a punitive damage number of $40,000. The Court did not award that entire amount. The Court only award[ed] $20,000. Because the plaintiff has pled for actual damages, we think that number of $20,000 is the starting point of the analysis[;] the analysis from there goes to looking at what they thought was an appropriate punishment number. In this case they're actually asking that the insurance company be punished as opposed to the driver who was off on his crime spree. They thought the driver should be punished four times the amount of actuals, and in this case we presume that they'll ask for a similar four times multiplier. And so that four times the $20,000 puts you at $80,000 without even getting to

the attorney fee issue. But certainly, the Court in its prerogative can look at the file in this case and already determine that there are going to be attorneys' fees incurred at this point that I would hazard a guess are in the 15, 16, $18,000 number already, and so we believe that this is a case where they left the number as an in[]determinant number intentionally. They did not put in anywhere initial pleadings that they were only going to seek 15,000 or only going to seek 50,000. They left that as an in[]determinant number. So we believe that the other papers that are available to this Court support the idea that this is a claim which is in excess of $75,000 and therefore was properly removed.

Tr. at 20:23-33:6 (Bellair). The Court was not convinced, however, because New Mexico law does not allow a plaintiff to put in a figure regarding the amount in controversy, and the Court would not want to hold that rule against Swiech in its consideration of the plausibility of a sufficient amount in controversy. See Tr. at 22:7-18 (Court). Fred Loya generally agreed with the Court, but argued:

I, like you, cannot recall off the top of my head whether I have seen someone say that we are not seeking damages in excess of 74,999. But that's not to say that it may not exist. I just don't have it within my experience that I could point at and say it happened in this case.

Tr. at 22:24-23:5 (Bellair). The Court then pressed Fred Loya, inquiring "if Mr. Valle puts in a stipulation, he goes back to his office today and puts one in the Court file, how could you complain if the case is back in state court with that stipulation? How could you complain?" Tr. at 23:6-10 (Court). Fred Loya stated that

I guess the only way that you could complain is that we're analyzing the case after it was filed and I think the rules governing the analysis talk about what the amount was at the time of filing. And so you know that, would be the only complaint that they've gone back and changed the numbers based on what happened in Federal Court after it was removed.

Tr. at 23:11-18 (Bellair). The Court further pressed Fred Loya, inquiring:

What do you do, if I put a lot of stock into the offer that was made of $50,000, what's your strongest argument that that's not a figure that sort of caps out at the time of the noti[ce of] removal? You've got an offer to settle for [$]50[,000.00]. Why is that not the figure I should use at the time of removal?

Tr. at 23:19-25 (Court).  Fred Loya responded:

> The fact of the matter is . . . that these bad faith type cases, while I would defer to plaintiff's counsel having a lot more expertise in . . . prosecuting these cases in New Mexico than I have, the fact of the matter is . . . we're entitled to look at the upside risk when we're removing, and the upside risk is in excess of $75,000 based on the idea that they're going to be attempting to recover what they feel they were shorted in the original state court proceeding.  That number is $20,000.  If we go with a multiplier authorized by statute, put three on it, you're at 60 thousand dollars.  And this is a case that, much like the underlying case, they're going to have at least $20,000 involved in it.  So you're still at $80,000 which is a number that justifies removal.

Tr. at 24:6-21 (Bellair).  The Court then gave its inclination:

> I'm leaning toward finding by a preponderance of the evidence that this doesn't meet [$]75,000.  I hear the defendant's calculation.  I'm going to go back and look at these demands that were made in the underlying case.  But I'm inclined [to] think that once they have that 50,000 offer, they had some duty to explore that before removing to Federal Court, maybe themselves affirmatively suggesting some stipulation or something to explore whether they really had it, otherwise we're kind of stuck in speculation, when we got a hard offer out there that's only two-thirds of the statutory dollar amount.  So I'm inclined to grant this motion.  But I want to give it some thought, and I guess, see if the plaintiff files the stipulation that we've talked about here as additional evidence.  I realize it's post removal, but I've got to make a preponderance of the evidence finding by some method.  And I think events around the removal both before and immediately after can have some probative effect so[,] I'll see what the plaintiff does, . . . but I'm leaning toward granting this motion, particularly if such a stipulation is filed.

Tr. at 24:25-25:23 (Court).

### 8.     The Stipulation.

Swiech stipulated, on August 23, 2017,

> that he is not seeking an amount in controversy that exceeds $74,999.00 in this case. Should a jury or court award more than $74,999.00, Plaintiff agrees that a judgment will be entered in an amount not to exceed $74,999.00.  This amount is inclusive of fees, costs and interest.

Stipulation, filed August 23, 2017 (Doc. 42)("Stipulation").

## RELEVANT LAW REGARDING REMOVAL

"If a civil action filed in state court satisfies the requirements for original federal jurisdiction, the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court 'embracing the place where such action is pending.'" Thompson v. Intel Corp., 2012 WL 3860748, at *4 (citing 28 U.S.C. § 1441(a)); see Huffman v. Saul Holdings Ltd. P'ship., 194 F.3d 1072, 1076 (10th Cir. 1999)). Defendants may remove a civil action to federal court where the district court would have original jurisdiction over the case based upon diversity of citizenship. Huffman v. Saul Holdings Ltd. P'ship., 194 F.3d at 1076 (quoting Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996)). Nonetheless, federal courts "are to . . . narrowly [construe removal statutes] in light of our constitutional role as limited tribunals." Pritchett v. Office Depot, Inc., 404 F.3d 1090, 1095 (10th Cir. 2005)(citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); United States ex rel. King v. Hillcrest Health Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001)). "All doubts are to be resolved against removal." Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982). The defendant seeking to remove an action to federal court bears the burden of establishing the district court's subject-matter jurisdiction over the case. See Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002).

### 1. The Presumption Against Removal.

Federal courts are courts of limited jurisdiction; thus, there is some measure of a presumption against removal jurisdiction which must be overcome by the defendant seeking removal. See Fajen v. Found. Reserve Ins. Co., 683 F.2d at 333; Bonadeo v. Lujan, 2009 WL 1324119, *4 (D.N.M. 2009)(Browning, J.)("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand."). The defendant seeking removal must establish that federal court jurisdiction is proper "by a preponderance of the evidence." McPhail

v. Deere & Co., 529 F.3d at 953.  See also Bonadeo v. Lujan, 2009 WL 1324119, at *4 ("As the removing party, the defendant bears the burden of proving all jurisdictional facts and of establishing a right to removal.").

### 2. Procedural Requirements for Removal.

Section 1446 of Title 28 of the United States Code governs the procedure for removal. "Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed."  Thompson v. Intel Corp., 2012 WL 3860748, at *5.  A removal which does not comply with the express statutory requirements is defective and must be remanded to state court. See Huffman v. Saul Holdings Ltd. P'ship, 194 F .3d at 1077.  See also Chavez v. Kincaid, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The [r]ight to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

Section 1446(a) of Title 28 of the United States Code provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."  Such notice of removal is proper if filed within thirty-days from the date when the case qualifies for federal jurisdiction.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68-69; 28 U.S.C. § 1446(b).  The Tenth Circuit has further elaborated that, for the thirty-day period to begin to run, "this court requires clear and unequivocal notice from the [initial] pleading itself" that federal jurisdiction is available.  Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998).  The Tenth Circuit specifically disagrees with "cases from other jurisdictions which impose a duty to investigate and determine removability where the initial

pleading indicates that the right to remove may exist." Akin v. Ashland Chem. Co., 156 F.3d at 1036.

### 3.    **Amendment of the Notice of Removal.**

In Caterpillar, Inc. v. Lewis, the Supreme Court of the United States held that a defect in subject-matter jurisdiction cured before entry of judgment did not warrant reversal or remand to state court. See 519 U.S. at 70-78. Similarly, citing Caterpillar, Inc. v. Lewis, the Tenth Circuit has held that "a defect in removal procedure, standing alone, is not sufficient to warrant vacating judgment and remand to state court if subject matter jurisdiction existed in the federal court." Browning v. Am. Family Mut. Ins. Co., 196 F. App'x 496, 505-06 (10th Cir. 2010). In McMahon v. Bunn-O-Matic Corp., 150 F.3d 651 (7th Cir. 1998)(Easterbrook, J.), the United States Court of Appeals for the Seventh Circuit noticed on appeal defects in the notice of removal, including that the notice failed to properly allege diversity of citizenship. See 150 F.3d at 653 ("As it happens, no one paid attention to subject-matter jurisdiction . . . ."). The Seventh Circuit permitted the defective notice of removal to be amended on appeal to properly establish subject-matter jurisdiction. See 150 F.3d at 653-54.

The Tenth Circuit has allowed defendants to remedy defects in their petition or notice of removal. See Jenkins v. MTGLQ Investors, 218 F. App'x. 719, 723 (10th Cir. 2007)(granting unopposed motion to amend notice of removal to properly allege jurisdictional facts); Watkins v. Terminix Int'l Co., 1997 WL 34676226, at *2 (10th Cir. 1997)(per curiam)(reminding the defendant that, on remand, it should move to amend the notice of removal to properly allege jurisdictional facts); Lopez v. Denver & Rio Grande W.R.R. Co., 277 F.2d 830, 832 (10th Cir. 1960)("Appellee's motion to amend its petition for removal to supply sufficient allegations of citizenship and principal place of business existing at the time of commencement of this action is

hereby granted, and diversity jurisdiction is therefore present."). The Tenth Circuit has further reasoned that disallowing amendments to the notice of removal, even after the thirty-day removal window had expired, when the defendant made simple errors in its jurisdictional allegations, "would be too grudging with reference to the controlling statute, too prone to equate imperfect allegations of jurisdiction with the total absence of jurisdictional foundations, and would tend unduly to exalt form over substance and legal flaw-picking over the orderly disposition of cases properly committed to federal courts." Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 301 (10th Cir. 1968). The Tenth Circuit noted that a simple error in a jurisdictional allegation included failing to identify a corporation's principal place of business or referring to an individual's state of residence rather than citizenship. Hendrix v. New Amsterdam Cas. Co., 390 F.2d at 301. In McEntire v. Kmart Corp., 2010 WL 553443 (D.N.M. 2010)(Browning, J.), when faced with insufficient allegations in the notice of removal -- allegations of "residence" not "citizenship" -- this Court granted the defendants leave to amend their notice of removal to cure the errors in some of the "formalistic technical requirements." 2010 WL 553443, at *8 (citing Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 300-02 (10th Cir. 1968)). Further, in Thompson v. Intel Corp., this Court permitted the defendant Intel Corp. to amend its notice of removal to include missing jurisdictional elements, including evidence that its principal place of business and corporate headquarters -- the center of Intel Corp.'s direction, control, and coordination of activities -- is out of state, so that the diversity requirements were met. See 2012 WL 3860748, at *1.

There are limits to the defects which may be cured by an amended notice of removal, as Professors Wright and Miller have explained:

> [A]n amendment of the removal notice may seek to accomplish any of several objectives: It may correct an imperfect statement of citizenship, state the

previously articulated grounds more fully, or clarify the jurisdictional amount. In most circumstances, however, defendants may not add completely new grounds for removal or furnish missing allegations, even if the court rejects the first-proffered basis of removal, and the court will not, on its own motion, retain jurisdiction on the basis of a ground that is present but that defendants have not relied upon.

14 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 3733, at 651-59 (4th ed. 2009)(footnotes omitted). Professor Moore has similarly recognized: "[A]mendment may be permitted after the 30-day period if the amendment corrects defective allegations of jurisdiction, but not to add a new basis for removal jurisdiction." 16 James William Moore, Moore's Federal Practice, § 107.30[2][a][iv], at 107-184 (3d ed. 2012). Thus, where diversity jurisdiction is asserted as a basis for removal of an action to federal court, the district court may permit the removing defendant to amend its removal notice, if necessary, to fully allege facts which satisfy the requirements of diversity jurisdiction by a preponderance of the evidence.

       **4.**      **Consideration of Post-Removal Evidence.**

As this Court has previously explained, the Tenth Circuit looks to both evidence in the complaint, and submitted after the complaint, in determining whether the criteria necessary for removal are met. See Thompson v. Intel Corp., 2012 WL 3860748, at *8 (citing McPhail v. Deere & Co., 529 F.3d at 956). The Tenth Circuit explained, in McPhail v. Deere & Co., that a district court may have evidence presented to a district court after a notice of removal has been filed, even if produced at a hearing on subject-matter jurisdiction, to determine if the jurisdictional requirements are met. See 529 F.3d at 593. "[B]eyond the complaint itself, other documentation can provide the basis for determining the amount in controversy -- either interrogatories obtained in state court before removal was filed, or affidavits or other evidence submitted in federal court afterward." 529 F.3d at 593 (citing Meridian Secs. Ins. Co. v. Sadowski, 441 F.3d 536, 541-42 (7th Cir. 2006)(Easterbrook, J.), and Manguno v. Prudential

Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002)).  As this Court has explained, "the

Seventh Circuit, on which the Tenth Circuit has heavily relied when addressing the amount in

controversy, has recognized that 'events subsequent to removal may clarify what the plaintiff

was actually seeking when the case was removed.'"  Aranda v. Foamex Int'l, 2012 WL 2923183,

at *18 (D.N.M. 2012)(Browning, J.)(quoting Carroll v. Stryker Corp., 658 F.3d 675, 681 (7th

Cir. 2011)).[7]  Thus, when determining if the requirements for federal jurisdiction are met in a

---

[7]The Court has found that the language in McPhail v. Deere & Co., to some extent,
conflicts with older Tenth Circuit decisions, but nevertheless defines the scope of evidence a
district court may consider when determining its jurisdiction over a matter removed from state
court:

> McPhail v. Deere & Co. appears to conflict with the Tenth Circuit's previous
> decisions in Laughlin v. Kmart Corp., and Martin v. Franklin Capital Corp..  In
> Laughlin v. Kmart Corp., the Tenth Circuit held that "Kmart's economic analysis
> of Laughlin's claims for damages prepared after the motion for removal and
> purporting to demonstrate the jurisdictional minimum does not establish the
> existence of jurisdiction at the time the motion was made." 50 F.3d at 873. In
> Martin v. Franklin Capital Corp., the Tenth Circuit held that the defendant's
> summary of the allegations and the requested relief "[did] not provide the
> requisite facts lacking in the complaint." 251 F.3d at 1291.

Aranda v. Foamex Int'l, 2012 WL 2923183, at * 15.  The Court explained that, although there is
some conflicting precedent within the Tenth Circuit on this matter, it is appropriate to consider
post-removal evidence to determine whether subject-matter jurisdiction exists, in light of the
Tenth Circuit's clarification of its precedents in McPhail v. Deere & Co.  Aranda v. Foamex
Int'l, 2012 WL 2923183, at *11-12.  Indeed, the Tenth Circuit admitted that its "opinions have
not been entirely clear on [this amount-in-controversy] issue," but held that its ruling in McPhail
v. Deere & Co. was consistent with the Tenth Circuit's prior holdings and analysis.  McPhail v.
Deere & Co., 529 F.3d at 954-55.  Describing its holding in Martin v. Franklin Capital Corp., in
which the Tenth Circuit stated that a defendant must "establish the jurisdictional amount by a
preponderance of the evidence," the Tenth Circuit said "it would have been more precise to say
that the defendant must affirmatively establish jurisdiction by proving jurisdictional *facts* that
made it *possible* that $75,000 was in play, which the defendants in Martin failed to do."  McPhail
v. Deere & Co., 529 F.3d at 955 (emphasis in original).  With respect to Laughlin v. Kmart
Corp., the Tenth Circuit clarified that it was "presented with a petition and a notice of removal
that both only referred to damages in excess of $10,000."  McPhail v. Deere & Co., 529 F.3d at

matter removed from state court, a district court may consider evidence submitted after removal. See Thompson v. Intel Corp., 2012 WL 3860748, at *14 ("[I]t is appropriate to consider post-removal evidence to determine whether subject-matter jurisdiction exists.").

## LAW REGARDING DIVERSITY JURISDICTION

"Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires: (i) complete diversity among the parties; and (ii) that 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'" Thompson v. Intel Corp., 2012 WL 3860748, at *12 (citing 28 U.S.C. § 1332(a)). As the Court has previously explained, "[t]he Supreme Court of the United States has described this statutory diversity requirement as 'complete diversity,' and it is present only when no party on one side of a dispute shares citizenship with any party on the other side of a dispute." McEntire v. Kmart Corp., 2010 U.S. Dist. LEXIS 13373, at *3 (D.N.M. 2010)(Browning, J.)(citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267-68 (1806), overruled in part by Louisville & N.R. Co. v. Mottley, 211 U.S. 149 (1908); McPhail v. Deere & Co., 529 F.3d at 951). The amount-in-controversy requirement is an "estimate of the amount that will be put at issue in the course of the litigation." Valdez v. Metro. Prop. & Cas. Ins. Co.,

_____

955. Furthermore, the notice of removal in Laughlin v. Kmart Corp. referred only to the removal statute and "thus no jurisdictional amounts are incorporated into the removal notice by reference to the statute." Laughlin v. Kmart Corp., 50 F.3d at 873. Accordingly, even though there appears to be some tension between these decisions, because the Tenth Circuit, in McPhail v. Deere & Co., characterized its holding as consistent with its prior decisions and because McPhail v. Deere & Co. is the Tenth Circuit's most recent, and most thorough, discussion of how to determine the amount in controversy, the Court will focus its analysis on that case. The Court thus finds that the Tenth Circuit's approach in Laughlin v. Kmart is "on of the most restrictive approaches to removal," and the Tenth Circuit has clarified its stance to allow a court to consider post-removal evidence when determining if federal court jurisdictional requirements are met. Aranda v. Foamex Int'l, 2012 WL 2923183, at n.11.

- 21 -

867 F. Supp. 2d 1143, 1163 (D.N.M. 2012)(Browning, J.)(citing <u>McPhail v. Deere & Co.</u>, 529 F.3d at 956).  The Court will discuss the two requirements in turn.

  **1. <u>Diversity in Citizenship</u>.**

  For diversity jurisdiction purposes, a person's domicile determines citizenship.  <u>See</u> <u>Crowley v. Glaze</u>, 710 F.2d 676, 678 (10th Cir. 2013).  "A person's domicile is  defined as the place in which the party has a residence in fact and an intent to remain indefinitely, as of the time of the filing of the lawsuit."  <u>McEntire v. Kmart Corp.</u>, 2010 U.S. Dist. LEXIS 13373, at *3 (citing <u>Crowley v. Glaze</u>, 710 F.2d at 678).  <u>See</u> <u>Freeport-McMoRan, Inc. v. KN Energy, Inc.</u>, 498 U.S. 426, 428 (1991)("We have consistently held that if jurisdiction exists at the time an action is commenced such jurisdiction may not be divested by subsequent events.").  If neither a person's residence nor the location where the person has an intent to remain can be established, the person's domicile is  that of his or her parents at the time of the person's birth.  <u>See</u> <u>Gates v. Comm'r of Internal Revenue</u>, 199 F.2d 291, 294 (10th Cir. 1952)("[T]he law assigns to every child at its birth a domicile of origin.  The domicile of origin which the law attributes to  an individual is the domicile of  his parents.  It continues until another domicile is lawfully acquired.").  Additionally, "while residence and citizenship are not the same, a person's place of residence is prima facie evidence of his or her citizenship."  <u>McEntire v. Kmart Corp.</u>, 2010 U.S. Dist. LEXIS 13373, at *3 (citing <u>State Farm Mut. Auto. Ins. Co. v. Dyer</u>, 19 F.3d 514, 520 (10th Cir. 1994)).  A corporation on the other hand, is "'deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of  business.'"  <u>Gadlin v. Sybron Int'l Corp.</u>, 222 F.3d 797, 799 (10th Cir. 2000)(quoting 28 U.S.C. § 1332(c)(1)).

  **2. <u>Amount in Controversy</u>.**

The statutory amount-in-controversy requirement, which presently stands at $75,000.00 must be satisfied as between a single plaintiff and a single defendant for a federal district court to have original jurisdiction over the dispute; "a plaintiff cannot aggregate independent claims against multiple defendants to satisfy the amount-in-controversy requirement," nor can multiple plaintiffs aggregate their claims against a single defendant to exceed the threshold. Martinez v. Martinez, 2010 U.S. Dist. LEXIS 38109, at *18 (D.N.M. 2010)(Browning, J.). If multiple defendants are jointly liable, or jointly and severally liable, on some of the claims, however, the amounts of those claims may be aggregated to satisfy the amount-in-controversy requirement as to all defendants jointly liable for the claims. See Alberty v. W. Sur. Co., 249 F.2d 537, 538 (10th Cir. 1957); Martinez v. Martinez, 2010 U.S. Dist. LEXIS 38109, at *18. Similarly, multiple plaintiffs may aggregate the amounts of their claims against a single defendant if the claims are not "separate and distinct." Martin v. Franklin Capital Corp., 251 F.3d 1284, 1292 (10th Cir. 2001)(Seymour, C.J.), abrogated on other grounds by Dart Cherokee Basin Operating Co. v Owens, 135 S. Ct. 547 (2014). Multiple claims by the same plaintiff against the same defendant may be aggregated, even if the claims are entirely unrelated. See 14A Charles A. Wright et al., Federal Practice and Procedure, Jurisdiction § 3704, at 566-95 (4th ed. 2011). While the rules on aggregation sound complicated, they are not in practice: if a single plaintiff -- regardless whether he or she is the only plaintiff who will share in the recovery -- can recover over $75,000.00 from a single defendant -- regardless whether the defendant has jointly liable co-defendants -- then the court has original jurisdiction over the dispute between that plaintiff and that defendant. The court can then exercise supplemental jurisdiction over other claims and parties that "form part of the same case or controversy under Article III," 28 U.S.C. § 1367(a),

meaning that they "derive from a common nucleus or operative fact." <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 725 (1996).

Satisfaction of the amount-in-controversy requirement must be established by a preponderance of the evidence. <u>See</u> <u>McPhail v. Deere & Co.</u>, 529 F.3d at 953, 955 ("[T]he defendant must affirmatively establish jurisdiction by proving jurisdictional facts that ma[k]e it possible that $75,000 [i]s in play."). In the context of establishing an amount-in-controversy, the defendant seeking removal could appear to be bound by the plaintiff's chosen amount of damages in the complaint, which would seem to allow a plaintiff to avoid federal jurisdiction "merely by declining to allege the jurisdictional amount [in controversy]." <u>McPhail v. Deere & Co.</u>, 529 F.3d at 955. The Tenth Circuit's decision in <u>McPhail v. Deere & Co.</u> has foreclosed such an option from a plaintiff who wishes to remain in state court. <u>McPhail v. Deere & Co.</u> holds that a defendant's burden in establishing jurisdictional facts is met if the defendant proves "jurisdictional facts that make it possible that $75,000 [is] in play." 529 F.3d at 955.

The Supreme Court recently clarified that a defendant seeking removal to federal court need only include in the notice of removal a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. <u>See</u> <u>Dart Cherokee Basin Operating Co., LLC v. Owens</u>, 135 S. Ct. at 554. The district court should consider outside evidence and find by a preponderance of the evidence whether the amount in controversy is satisfied "only when the plaintiff contests, or the court questions, the defendant's allegation." <u>Dart Cherokee Basin Operating Co., LLP v. Owens</u>, 135 S. Ct. at 554.

## <u>ANALYSIS</u>

The primary issue is whether Fred Loya has met its burden in establishing by a preponderance of the evidence that the amount in controversy plausibly satisfies the

jurisdictional threshold of $75,000.00 for the Court's exercise of diversity jurisdiction. Because the Court concludes that Fred Loya has not met its burden, the Court will grant the Motion and remand this case to the First Judicial District Court, County of Santa Fe, State of New Mexico.

In this case, Swiech's New Mexico state court Complaint's allegations do not provide sufficient information from which to determine an exact amount in controversy. <u>See</u> Complaint, <u>passim</u>. Such pleading practice is, however, consistent with New Mexico's pleading rules, which disallows Swiech from specifying a monetary amount for damages. <u>See</u> NMRA 1-008 (stating that a "complaint shall not contain an allegation for damages in any specific monetary amount"). Section 1446(a) of Title 28 of the United States Code provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." Such notice of removal is proper if filed within thirty days from the date when the case qualifies for federal jurisdiction. <u>See</u> <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. at 68-69; 28 U.S.C. § 1446(b). The Tenth Circuit specifically disagrees with "cases from other jurisdictions which impose a duty to investigate and determine removability where the initial pleading indicates that the right to remove may exist." <u>Akin v. Ashland Chem. Co.</u>, 156 F.3d at 1036. Faced with this indeterminate amount and its statutory requirements for removal, Fred Loya chose to file a Notice of Removal, providing as grounds:

> Plaintiff seeks punitive damages against Defendant due to allegations of bad faith insurance practices and unfair trade practices and seeks attorney's fees as a matter of right under a claim of breach of contract. . . . Plaintiff obtained a judgment in the district court concerning the underlying cause of action for damages for $32,000 ($20,000 recovery of punitive damages and $12,000 in attorney's fees). Plaintiff alleges wanton, willful and bad faith acts on the part of the Defendant and seeks punitive damages pursuant to the insurance bad faith, breach of contract

and unfair practices. Consequently, it is plausible, and likely, that Plaintiff's alleged damages exceed $75,000.

Removal ¶ 3, at 2. Generally, satisfaction of the amount-in-controversy requirement must be established by a preponderance of the evidence. See McPhail v. Deere & Co., 529 F.3d at 953. If a preponderance was not the standard in the context of establishing an amount-in-controversy, the plaintiff's chosen amount of damages in the complaint could bind a defendant like Fred Loya who is seeking removal, which would seem to allow a plaintiff to avoid federal jurisdiction "merely by declining to allege the jurisdictional amount [in controversy]." McPhail v. Deere & Co., 529 F.3d at 955. The Tenth Circuit's decision in McPhail v. Deere & Co. thus forecloses such an option from a plaintiff who wishes to remain in state court, and holds that a defendant's burden in establishing jurisdictional facts is met if the defendant proves by a preponderance "jurisdictional facts that make it possible that $75,000 is in play." 529 F.3d at 955. Indeed, the Supreme Court has clarified that a defendant seeking removal to federal court need only include in the notice of removal a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. See Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. at 554. The Supreme Court also instructs district courts to consider outside evidence and find by a preponderance of the evidence whether the amount in controversy is satisfied "only when the plaintiff contests, or the court questions, the defendant's allegation." Dart Cherokee Basin Operating Co., LLP v. Owens, 135 S. Ct. at 554.

Regardless, the issue with Fred Loya's Removal is that, despite its recitation of the grounds for removal regarding its calculation of the possible amount in controversy under the Complaint, Swiech's First Demand -- which preceded removal -- appears to tell a different story. See First Demand at 1. Swiech, on the same day he filed his Complaint, served the First Demand upon Fred Loya and asked for $50,000.00 in entire satisfaction of his lawsuit. See First

Demand at 1. Accordingly, there is tension between the First Demand and the amount in controversy that Fred Loya asserts in the Notice of Removal, and that tension affects the plausibility analysis. To be sure, Swiech's Complaint does not quantify the amount of damages requested, nor does the Notice of Removal, which provides only the damages amount that the state trial court awarded Swiech -- $32,000.00 -- as its basis for extrapolating that, in this "bad faith, breach of contract and unfair practices" action, wherein Swiech seeks punitive damages and attorney's fees, it is plausible and likely that the amount in controversy exceeds $75,000. Removal ¶ 3, at 2. Accordingly, the Court is left to consider whether Fred Loya has demonstrated, by a preponderance of the evidence, that it is plausible the amount in controversy in this case exceeds $75,000.00 in light of Swiech's First Demand putting only $50.000.00 in controversy.

The Court, again, notes that, in its consideration of this issue, it must be mindful that federal courts are courts of limited jurisdiction, and that the burden to establish jurisdiction is on Fred Loya. See Fajen v. Found. Reserve Ins. Co., 683 F.2d at 333 ("[A]ll doubts are to be resolved against removal."); Bonadeo v. Lujan, 2009 WL 1324119, *4 ("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand.")(citing Fajen v. Found. Reserve Ins. Co., 683 F.2d at 333). Guided by that posture regarding removal of civil actions to federal court based upon diversity jurisdiction, the Court is initially weary that it lacks subject-matter jurisdiction over this action, and that the action must be remanded to the state court, because Swiech's First Demand exists and ostensibly puts at controversy only $50,000.00. See Tr. at 24:25-25:23 (Court)(explaining that the First Demand appears to fly in the face of Fred Loya's decision to file its Notice of Removal). Yet, the Tenth Circuit has held that

> a proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence.

- 27 -

> Once the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal. Only if it is 'legally certain' that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be dismissed.

McPhail v. Deere & Co., 529 F.3d at 955 (quoting Meridian Security Ins. Co. v. Sadowski, 441 F.3d at 540-43). The defendants need only "affirmatively establish jurisdiction by proving jurisdictional facts that ma[k]e it possible that $75,000 [is] in play" at the time of removal. McPhail v. Deere & Co., 529 F.3d at 955 (emphasis omitted). Further, the Tenth Circuit also looks to both evidence in the complaint, and submitted after the complaint, in determining whether the criteria necessary for removal are met. See Thompson v. Intel Corp., 2012 WL 3860748, at *8 ("In determining that the jurisdictional amount was met, the Tenth Circuit looked to the allegations in the complaint and a series of electronic mail transmissions, included in the notice of removal, indicating that the plaintiff's counsel also believed that the amount in controversy 'very well may be' above $75,000.00.")(quoting McPhail v. Deere & Co., 529 F.3d at 956. The Tenth Circuit explained, in McPhail v. Deere & Co., that a district court may solicit evidence after a notice of removal has been filed, even if such is produced at a hearing on subject-matter jurisdiction, to determine if the jurisdictional requirements are met. See McPhail v. Deere & Co., 529 F.3d at 593. "[B]eyond the complaint itself, other documentation can provide the basis for determining the amount in controversy -- either interrogatories obtained in state court before removal was filed, or affidavits or other evidence submitted in federal court afterward." McPhail v. Deere & Co., 529 F.3d at 593 (citing Meridian Secs. Ins. Co. v. Sadowski, 441 F.3d 536, 541-42 (7th Cir. 2006)(Easterbrook, J.), and Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002)). The Court has previously explained that "the Seventh Circuit, on which the Tenth Circuit has heavily relied when addressing the

amount in controversy, has recognized that 'events subsequent to removal may clarify what the plaintiff was actually seeking when the case was removed.'" Aranda v. Foamex Int'l, 2012 WL 2923183, at *18 (quoting Carroll v. Stryker Corp., 658 F.3d at 681). Thus, when determining if the requirements for federal jurisdiction are met in a matter removed from state court, a district court may consider evidence submitted after removal. See Thompson v. Intel Corp., 2012 WL 3860748, at *14 ("[I]t is appropriate to consider post-removal evidence to determine whether subject-matter jurisdiction exists."). One item of evidence, occurring after removal in this case, is Swiech's revised settlement offer of only $15,000.00, which Fred Loya similarly ignored. See Response at 1. Another item of evidence, however, is Fred Loya's calculations of potential amounts in controversy in its Response, purported facts "that $75,000 [is] in play." McPhail v. Deere & Co., 529 F.3d at 955. See Response at 9-10. Additionally, Swiech's Stipulation disavows an amount in controversy over the jurisdictional limit. See Stipulation at 1. This post-removal evidence, similar to the pre-removal evidence of Swiech's First Demand and Fred Loya's jurisdictional statement in the Notice of Removal, thus continues to appear to be in conflict.

At the hearing, the Court inquired of Fred Loya:

What do you do, if I put a lot of stock into the offer that was made of $50,000, what's your strongest argument that that's not a figure that sort of caps out at the time of the noti[ce of] removal? You've got an offer to settle for [$]50[,000.00]. Why is that not the figure I should use at the time of removal?

Tr. at 23:19-25 (Court). In its research subsequent to the hearing, the Court is impressed by the stock a plaintiff's offer to settle has carried in courts throughout this circuit, with one caveat: the offers to settle are almost always of an amount above the jurisdictional amount, and are being offered as evidence by defendants who are seeking to demonstrate a jurisdictional amount in

controversy by a preponderance.  For example, in <u>McPhail v. Deere & Co.</u> the Tenth Circuit stated:

> Furthermore, a plaintiff's proposed settlement amount "is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim."  Acknowledging that the use of a settlement offer would not be permissible at trial as evidence to establish "'liability for or invalidity of the claim or its amount,'" the Ninth Circuit has held that it is permissible for a district court to consider settlement offers when deciding the jurisdictional question.  We agree.  The amount in controversy is not proof of the amount the plaintiff will recover.  Rather, it is an estimate of the amount that will be put at issue in the course of the litigation.  To this end, documents that demonstrate plaintiff's own estimation of its claim are a proper means of supporting the allegations in the notice of removal, even though they cannot be used to support the ultimate amount of liability.

<u>McPhail v. Deere & Co.</u>, 529 F.3d at 956 (quoting <u>Cohn v. Petsmart, Inc.</u>, 281 F.3d 837, 840, n.3 (9th Cir. 2002)(internal citations omitted)).  Subsequent to <u>McPhail v. Deere & Co.</u>, various courts have looked to a plaintiff's settlement offer as evidence that the jurisdictional amount was satisfied.  <u>Cf.</u> <u>Roadcap v. Auto-Owners Insurance Company</u>, 2014 WL 3952802, at *2 (D. Colo. 2014)(Brimmer, J.)(considering a $100,000.00 demand and retaining jurisdiction, because "[a]lthough plaintiff argues that a jury may not ultimately award her more than $75,000, the jurisdictional amount is to be determined at the time of removal," and "a plaintiff's offer of settlement is relevant evidence"); <u>Ogburn v. Amer. Natl. Property & Casualty Co.</u>, 2014 WL 5395198, at *3 (D. Colo. 2014)(Babcock, J.)(considering a pre-removal demand, supported by expert analysis, in excess of $75,000.00 dollars, and thus retaining jurisdiction); <u>Levings v. Interstate Distributor Co.</u>, 2010 WL 5072021, at *2 (D. Colo. 2010)(Hegarty, M.J.)(considering an ambiguous suggestion by plaintiff in settlement negotiations whether the case was worth more than $100,000.00, and concluding: "With these principles in mind, the Court finds that Defendant has affirmatively established jurisdiction by proving facts, through defense counsel's unrebutted affidavit, that make it possible that the amount in controversy in this case exceeds

$75,000.00. [Plaintiff's] stated belief that the case is worth more than $100,000.00 simply estimates the amount that will be put at issue in the course of the litigation."). Another court has stated:

> Because defendant has established sufficient jurisdictional facts, Ms. Stevenson must now show, to a legal certainty, that the amount in controversy is less than $75,000. *See McPhail*, 529 F.3d at 955. In arguing that the jurisdictional threshold has not been met, Ms. Stevenson presents evidence of a settlement offer of $50,000 she communicated to defendant on June 20, 2013. . . . A plaintiff's proposed settlement reflecting a reasonable estimate of plaintiff's claim "'is relevant evidence of the amount in controversy.'" *McPhail*, 529 F.3d at 956 (quoting *Cohn v. Petsmart, Inc.*, 281 F.3d [at] 840[]. However, plaintiff's counsel did not communicate the settlement offer until after defendant filed its Notice of Removal. . . . Because the amount in controversy is determined when a notice of removal is filed, any subsequent valuation of damages is generally irrelevant. *See Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 ("economic analysis of [plaintiff's] claims for damages, prepared after the motion for removal . . . does not establish the existence of jurisdiction at the time the motion was made"); 14C Charles Alan Wright et al., Federal Practice & Procedure § 3725.1 (4th ed. 2013)("satisfaction of the amount-in-controversy requirement generally is determined on the basis of the record existing at the time the notice of removal . . . is filed with the district court"). Thus, the Court finds that Ms. Stevenson's settlement offer does not show, to a legal certainty, that the amount in controversy was less than $75,000 on the date defendant filed its Notice of Removal.

Stevenson v. Schneider Electric U.S.A., Inc., 2014 WL 789081, at *4 (D. Colo. 2014)(Brimmer, J.). That court -- in retaining jurisdiction -- also stated, in regard to that plaintiff's post-removal settlement offer, that,

> [a]lthough Ms. Stevenson does not provide evidence indicating that $50,000 is a reasonable estimate of her claim, a plaintiff's good faith settlement offer is one means of establishing the amount in controversy requirement. *See McPhail*, 529 F.3d at 956. Ms. Stevenson, however, cites no authority to support her argument that a settlement offer is entirely determinative of the amount in controversy. Thus, even if the Court were to consider Ms. Stevenson's settlement offer as indicative of the amount in controversy at the time of removal, it is insufficient to defeat jurisdiction when balanced with defendant's showing of jurisdictional facts.

Stevenson v. Schneider Electric U.S.A., Inc., 2014 WL 789081, at *4 n.5. The circumstances here are different, because Swiech has never by himself -- in this action -- explicitly sought in

excess of $75,000.00.  See First Demand at 1.  Instead, Swiech demanded $50,000.00 before

removal.  See First Demand at 1.  If the Court, under McPhail v. Deere & Co., is to credit a

defendant's proffer of the "plaintiff's own estimation of its claim" as "a proper means of

supporting the allegations in the notice of removal," the Court cannot overlook the fact that Fred

Loya here ignored Swiech's First Demand.  It does not seem symmetrical for the Defendant be

authorized to wield a demand as a sword in establishing jurisdiction in a federal court of limited

jurisdiction and then say the plaintiff similarly cannot use settlement demands to establish

amounts below the jurisdictional amount.  If, indeed, at its core, the amount-in-controversy

requirement is an "estimate of the amount that will be put at issue in the course of the litigation,"

Valdez v. Metro. Prop. & Cas. Ins. Co., 867 F. Supp. 2d at 1163 (citing McPhail v. Deere & Co.,

529 F.3d at 956), the Court must credit Swiech's First Demand with ample weight when

determining whether, by its Notice of Removal, Fred Loya has established by a preponderance

the plausibility that the amount in controversy here exceeds $75,000.00.  Fred Loya's Notice of

Removal simply explains what the Court already knows -- that being that punitive damages and

attorney's fees are requested, and that $32,000.00 was awarded in the underlying state litigation -

- but does not offer any contrary evidence to undermine the First Demand's estimation of the

amount at which Swiech values this controversy.  Although the standard is only one sounding in

plausibility, the Court would be hard pressed to agree with Fred Loya's assertion that it is

plausible that the amount in controversy exceeds $75,000.00, when the case would have settled

for $50,000.00 before removal to federal court.  Fred Loya has not presented the Court with

evidence that, for example, Swiech sought an amount higher than $50,000.00 in satisfaction of

this lawsuit, or that the amount Fred Loya uses in its calculations regarding punitive damages --

$20,000.00 -- would be the beginning number at which Swiech would begin.  Indeed, Swiech

casts doubt upon Fred Loya's calculations, stating instead that he values this case at $50,000.00 or less. See Tr. at 18:4-18 (Valle).

Accordingly, the Court concludes that, in its assessment solely of the pre-Removal evidence, Fred Loya does not establish by a preponderance of the evidence jurisdictional facts regarding a plausible amount in controversy in excess of $75,000.00, because of the First Demand's effect. To be sure, the First Demand summarily requested $50,000.00, but the Court is not otherwise persuaded that Swiech's First Demand was an unreasonable one; plus, in the Court's consideration of the Stipulation disclaiming liability in excess of $75,000.00, the Court's conclusion finds further support that there likely was not a preponderance of evidence establishing jurisdictional facts regarding a plausible jurisdictional amount at the time of removal. Indeed, Fred Loya conceded that its only complaint with remand, should Swiech stipulate to less than $75,000.00, would be that such a stipulation would be post-removal evidence. See Tr. at 23:11-18 (Bellair)("I guess the only way that you could complain is that we're analyzing the case after it was filed and I think the rules governing the analysis talk about what the amount was at the time of filing. And so you know that, would be the only complaint that they've gone back and changed the numbers based on what happened in Federal Court after it was removed."). Regardless, the Court concludes that there is ample pre-removal evidence which belies Fred Loya's ability to show by preponderance jurisdictional facts making plausible a jurisdictional amount in controversy. The facts upon which Fred Loya relies to reach its calculations are not established by a preponderance, because Fred Loya's estimations undercut their viability. Further, while plausibility is a low standard, it is not a zero-sum standard, and here, again, the jurisdictional facts belie plausibility. The Court thus concludes that Fred Loya has not demonstrated by a preponderance of the evidence jurisdictional facts that make it

plausible that the amount in controversy in this case exceeds $75,000.00, essentially because of Swiech's First Demand putting only $50,000.00 in controversy.

**IT IS ORDERED** that the Plaintiff's Motion to Remand, filed October 6, 2016 (Doc. 13), is granted. The Court will enter Final Judgment and remand this case to the First Judicial District Court, County of Santa Fe, State of New Mexico.

_____
UNITED STATES DISTRICT JUDGE

_Counsel:_

Matthew J. Zamora
Richard J. Valle
Carter & Valle Law Firm
Albuquerque, New Mexico

    _Attorneys for the Plaintiff_

Elizabeth G. Hill
Law Office of Elizabeth G. Hill, P.C.
Lubbock, Texas

-- and --

Andrew B. Curtis
Gary Michael Bellair
Craig, Terrill, Hale & Grantham, L.L.P.
Lubbock, Texas

    _Attorneys for the Defendant_